**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ORTHOPEDIC ASSOCIATES OF 65**
**PENNSYLVANIA AVENUE, BINGHAMTON,**
**NEW YORK**, **P.C.,** as Plan Administrator
of the Orthopedic Associates Defined
Contribution Pension Plan,

|  |  |  |
|---|---|---|
|  | **Plaintiff,** | **3:00-cv-238 (GLS)** |
| **v.** |  |  |

**ROBERT M. SEDOR, JR., CFP, RFC;**
**UPSTATE MANAGEMENT ASSOCIATES,**
**INC.** d/b/a **THE BAY RIDGE GROUP;** and
**NORAH A. BREEN,**

|  |  |
|---|---|
|  | **Defendants.** |

_____

**ROBERT W. MILGRAM, M.D.,**

|  |  |  |
|---|---|---|
|  | **Plaintiff,** | **3:02-cv-255 (GLS)** |
| **v.** |  |  |

**ORTHOPEDIC ASSOCIATES OF 65**
**PENNSYLVANIA AVENUE, BINGHAMTON,**
**NEW YORK**, **P.C.,** as Plan Administrator
of the Orthopedic Associates Defined
Contribution Pension Plan; **ROBERT M.**
**SEDOR, JR., CFP, RFC; UPSTATE**
**MANAGEMENT ASSOCIATES, INC.**
d/b/a **THE BAY RIDGE GROUP;** and
**NORAH A. BREEN,**

|  |  |
|---|---|
|  | **Defendants.** |

_____

| APPEARANCES: | OF COUNSEL: |
|---|---|

**For Orthopedic Associates:**
Hancock, Estabrook Law Firm          JAMES E. HUGHES, ESQ.
1500 AXA Tower I
Syracuse, NY 13221

**For Robert W. Milgram:**
Mackenzie, Hughes Law Firm          CARTER H. STICKLAND, ESQ.
101 South Salina Street          DAVID M. GARBER, ESQ.
Suite 600
Syracuse, NY 13221

**For Robert M. Sedor, Jr. and**
**Upstate Management:**
Costello, Cooney Law Firm          PAUL G. FERRARA, ESQ.
205 South Salina Street
Syracuse, NY 13202

**For Norah A. Breen:**
Sapir, Frumkin Law Firm          WILLIAM D. FRUMKIN, ESQ.
399 Knollwood Road, Suite 310
White Plains, NY 10603

**Gary L. Sharpe**
**District Court Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

On March 30, 2010, following a non-jury ERISA[1] trial, the court

---

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*

issued a Memorandum-Decision and Order finding, among other things, Dr.

Robert Milgram entitled to recover a money judgment in the amount of

$1,571,723.73 against the Orthopedic Associates Defined Contribution

Pension Plan (the Plan).  (*See* Mar. 30, 2010 Order at 12-13, 63-64, 02-cv-

255, Dkt. No. 12.)  The court subsequently denied the Plan's motion to stay

the enforcement of the judgment and issuance of a writ of execution.  (02-

cv-255, Dkt. Nos. 51, 52.)  Pending are: (1) Norah Breen's motion to alter

and remove certain language from the March 30, 2010 Order, (00-cv-238,

Dkt. No. 278); (2) the Plan's motions to amend the costs awarded to

Milgram, (02-cv-255, Dkt. No. 54), and to Sedor and Upstate, (00-cv-238,

Dkt. No. 291); (3) Milgram's motion for attorneys' fees and costs against

the Plan, (02-cv-255, Dkt. No. 28; *see also* Letter Mot., 00-cv-238, Dkt. No.

273); (4) the Plan's motion for attorneys' fees against Breen, (00-cv-238,

Dkt. No. 271); and (5) Robert Sedor and Upstate Management's motion for

attorneys' fees and costs against Breen, (02-cv-255, Dkt. No. 34; 00-cv-

238, Dkt. No. 267).[2]  For the reasons that follow, Breen's motion to alter is

denied; the Plan's motions to amend costs are granted in part and denied

---

[2]Sedor and Upstate's motion for attorneys' fees and costs against the Plan, (*see* 02-cv-255, Dkt. No. 36; 00-cv-238, Dkt. No. 268), was withdrawn on June 14, 2011, by letter and order, (*see* 00-cv-238, Dkt. Nos. 364, 365).

3

in part with leave to renew; Milgram's motion for attorneys' fees and costs is granted; and the Plan and Sedor and Upstate's motions for attorneys' fees and costs are granted with reductions.

## II.  Discussion

### A.   Motion to Alter the Language of the Order

Upon review of its March 30, 2010 Order, the court discerns no factually unsupported statement or conclusion regarding Breen's past actions and present legal obligations, and therefore denies Breen's June 22, 2010 letter motion seeking alteration and removal of certain language from the Order.  (*See* 00-cv-238, Dkt. No. 278.)

### B.   Motions to Retax Costs

On April 29, 2010, Milgram filed a bill of costs to be taxed, (02-cv-255, Dkt. No. 22), which the court awarded against the Plan on August 10, 2010, (02-cv-255, Dkt. No. 53).  Likewise, Sedor and Upstate submitted a bill of costs on May 4, 2010, (00-cv-238, Dkt. No. 262; 02-cv-255, Dkt. No. 27), which were also awarded on August 10, (00-cv-238, Dkt. No. 287). On August 17, 2010, the Plan moved to amend certain costs awarded to Milgram, (02-cv-255, Dkt. No. 54), and to Sedor and Upstate, (00-cv-238, Dkt. No. 291).

4

**1.     Milgram's Bill of Costs**

The Plan challenges the appropriateness of Milgram's $7,110.11 expert witness fee and the adequacy of Milgram's itemization of photocopying costs and "other costs." (*See* Plan Mem. of Law at 2-4, 02-cv-255, Dkt. No. 54:1.)  In response, Milgram, without addressing the merits of his costs, simply argues that the Plan's bill of costs is substantially similar to Milgram's and that the Plan should consequently be estopped from challenging his claimed costs.  (*See* Milgram Resp. Mem. of Law at 3-6, 00-cv-238, Dkt. No. 301.)  By a supplemental letter, Milgram offers a more specific breakdown of costs and also seeks additional costs in the amount of $10,407.83 for computer legal research and online searches. (*See* 00-cv-238, Dkt. No. 273.)

At the threshold, the court rejects Milgram's estoppel arguments for several reasons, not least of which are (1) that the Plan's itemizations are sufficiently distinct from and more specific and defined than Milgram's, (*compare* Plan Bill of Costs, 00-cv-238, Dkt. No. 264, *with* Milgram Bill of Costs, 02-cv-255, Dkt. No. 22); and (2) that such arguments are irrelevant[3]

_____

[3]Essentially, Milgram's argument seems to be that he should be allowed to submit an inaccurate or unreasonable bill of costs because the Plan did so without objection from Breen. The court refuses to adopt such a sophism.

and misperceive the applicability of estoppel, particularly since there is nothing patently inconsistent between the positions taken by the Plan in seeking costs and in challenging Milgram's costs.

Moving on to the merits of the Plan's challenge, Milgram concedes, and the court finds, that "the Plan is correct that expert witness fees are not ordinarily recoverable as taxable costs."  (Milgram Resp. Mem. of Law at 5 n.1, 00-cv-238, Dkt. No. 301.)  Furthermore, the court concurs with the Plan insofar as Milgram has failed to sufficiently itemize and delineate the "other costs" he claims.  Therefore, the court grants the Plan's motion insofar as Milgram is ordered to supplement and/or amend his bill of costs as it relates to "fees for witnesses" and "other costs."  However, because Milgram's photocopying costs and other categorized costs are reasonable and sufficiently supported and itemized, the court denies the Plan's motion as to the remaining costs identified in Milgram's bill of costs.

## 2.    Sedor and Upstate's Bill of Costs

The Plan further challenges several aspects of Sedor and Upstate's bill of costs, including the filing of identical bills of costs against both the Plan and Breen; the appropriateness of the $6,648.75 expert witness fee; the reasonableness of photocopying costs; the availability of research,

travel, and conference call costs; and the general adequacy of Sedor and Upstate's itemization of costs.  (*See* Plan Mem. of Law at 2-4, 00-cv-238, Dkt. No. 291:1.)  In response, Sedor and Upstate first acknowledge that they are not entitled to the expert witness fees set forth in their bill of costs and accordingly agree to a $6,648.75 reduction.  (*See* Ferrera Aff. ¶ 6, 02-cv-255, Dkt. No. 58.)  However, Sedor and Upstate otherwise contend that their bill of costs is accurate, reasonable, and sufficiently specific, and that they "are not attempting to recover duplicate amounts" and that the Plan and Breen are jointly responsible for all costs incurred.  (*Id.* at ¶¶ 8-21.)

Putting aside Sedor and Upstate's conceded reduction based on the unavailability of expert witness fees, the court discerns no problems regarding the recoverability or reasonableness of the remainder of Sedor and Upstate's claimed costs.[4]  However, the court is not presently in a position to evaluate the extent of Sedor and Upstate's entitlement to costs due to the stipulation of partial discontinuance between them and the Plan.  (*See* 00-cv-238, Dkt. No. 357.)  Thus, while the court credits Sedor and Upstate's asserted good faith in filing duplicate bills of costs and rejects as

---

[4]Notwithstanding Milgram's failed estoppel argument, the court looks with suspicion upon certain of the Plan's challenges, since the Plan seems to have sought similar types of costs, including extensive travel, photocopying, and witness fees.  (*See* 00-cv-238, Dkt. No. 264.)

unfounded and unwarranted the Plan's suggestion that Sedor and Upstate are attempting to "recover[] twice for the same expenses,"[5] (Plan Mem. of Law at 2, 00-cv-238, Dkt. No. 291:1), the overlapping nature of the evidence and resultant overlapping nature of costs arising from the ERISA and state-law actions render premature any conclusive resolution of what costs each party is liable for and whether and how such costs should be apportioned consistent with both the court's March 30, 2010 Order and the parties' stipulation.  Accordingly, the court orders that Sedor and Upstate's bills of costs be stricken from the record; that Sedor and Upstate be granted leave to file a new bill of costs; and that the Plan's motion to amend costs be otherwise denied with leave to renew.

## C.   **Motions for Attorneys' Fees**

In an ERISA action, the court has the discretion to award "a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  Importantly though, a party seeking attorneys' fees "must show some degree of success on the merits."  *Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2158 (2010) (internal quotation marks and citation

---

[5]"Any such award [for costs] ... is subject to the usual limitation that the prevailing party may receive only one satisfaction of costs; that is, he cannot recover more than his total entitlement."  *Ortho-McNeil Pharm., Inc. v. Mylan Labs. Inc.*, 569 F.3d 1353, 1357 (Fed. Cir. 2009) (internal quotation marks and citation omitted).

omitted).  When determining the amount of attorneys' fees to award, courts

within the Second Circuit must evaluate five factors:

> (1) the degree of the offending party's culpability or bad faith,
> (2) the ability of the offending party to satisfy an award of
> attorney's fees, (3) whether an award of fees would deter other
> persons from acting similarly under like circumstances, (4) the
> relative merits of the parties' positions, and (5) whether the
> action conferred a common benefit on a group of pension plan
> participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871

(2d Cir. 1987) (citation omitted).  "[F]ailure to satisfy [one of the] *Chambless*

factor[s] does not preclude an award of attorneys' fees." *Locher v. Unum*

*Life Ins. Co. of Am.*, 389 F.3d 288, 299 (2d Cir. 2004) (citation omitted);

*see also Chapman v. ChoiceCare Long Island Long Term Disability Income*

*Plan*, No. 05-0687, 2005 WL 3556194, at *2 (2d Cir. Dec. 29, 2005).

When determining the amount of attorneys' fees to award, courts

within the Second Circuit apply a "presumptively reasonable fee analysis."

*Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 141 (2d

Cir. 2007).  This analysis "involves determining the reasonable hourly rate

for each attorney and the reasonable number of hours expended, and

multiplying the two figures together to obtain the presumptively reasonable

fee award." *Id.* (citations omitted).  In determining what is reasonable, the

following factors are useful:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany and Albany Cnty. Bd. of Elections*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)).  The court may also consider any independent interest counsel had in the case's outcome or any expected returns from the representation, such as reputational benefits that might accrue from being associated with the case.  *See id.* at 184, 190.

In addition to guiding the court in determining what constitutes a reasonable award, the *Arbor Hill* and *Johnson* factors "may lead the district court to adjust the fee upward or downward."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 & n.9 (1983).  For instance, where a plaintiff brings two distinct claims based on different facts and legal theories, and is ultimately

successful on only one, the court may decline to award fees for services provided regarding the unsuccessful claim. *See id.* at 434-35.  However, the court may not reduce a fee solely because counsel relies on alternative legal bases to achieve the same outcome, for "[t]he result is what matters." *See id.* at 435.  Thus, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.*  Moreover, "in some cases of exceptional success an enhanced award may be justified." *Id.*; *see also Green v. Torres*, 361 F.3d 96 (2d Cir. 2004).  But, the party advocating an upward or downward departure bears the burden of establishing that "an adjustment is necessary to the calculation of a reasonable fee." *Grant v. Martinez*, 973 F.2d 96, 101 (2d Cir. 1992) (citing *U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 413 (2d Cir. 1989)).

Absent delay caused by the party seeking fees, the "reasonable hourly rate" to be relied on by the court in making its calculations "should be 'current rather than historic hourly rates.'" *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989)).  The rationale behind using current hourly rates is that "compensation received several years after the services were rendered ...

11

is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings." *Jenkins*, 491 U.S. at 283; *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998).

**1.     Milgram's Motion for Attorneys' Fees**

Pursuant to 29 U.S.C. § 1132(g)(1), Milgram moves for attorneys' fees in the amount of $325,062.26.  (*See* 02-cv-255, Dkt. No. 28.)  Milgram also seeks $15,337.50 in non-taxable costs based on services provided by Scolaro, Shulman, Cohen, Felter & Burstein, P.C. in advising Milgram's counsel about the reasonableness of legal fees, and $10,407.83 for computer and online legal research.  (*See* Letter Mot., 00-cv-238, Dkt. No. 273; Milgram Mem. of Law at 17, 02-cv-255, Dkt. No. 28:14.)  Finding misguided the Plan's attempt to blame Dr. Milgram for its own erroneous and obstructive conduct, (*see* Plan Resp. Mem. of Law at 2-4, 02-cv-255, Dkt. No. 44), the court grants Milgram's motion for attorneys' fees in the amount of $325,062.26, and additional costs in the amount of $25,745.33.

At the threshold, there is no question that Milgram is entitled under ERISA to attorneys' fees from the Plan.  As made clear in the court's March 30, 2010 Order, the Plan has consistently attempted to shirk its

responsibilities and refuse to account for its obvious—and
admitted—mistakes.  (*See* Mar. 30, 2010 Order at 16-20, 28-31, 00-cv-238,
Dkt. No. 237.)  In fact, even in its opposition to Milgram's motion for
attorneys' fees, the Plan continues to make arguments wholly unsupported
by the factual and legal record.  Thus, the Plan's culpability is substantial.
Second, the court has repeatedly outlined at length the Plan's ability, and
obligation, to satisfy Milgram's entitlements, which in the court's view
includes an award of attorneys' fees.  (*See id.* at 37; *see also* Aug. 10,
2010 Order at 3, 02-cv-255, Dkt. No. 51.)  As to the third factor, deterrence,
although the facts underlying this case are unique, an award against the
Plan would likely serve to deter plan administrators from ignoring or
unlawfully assigning their fiduciary duties, and from unreasonably and
inequitably delaying the issuance of benefits.  Fourth, the merits favor
Milgram entirely.  And fifth, while the court's rulings were generally limited
to the unique factual predicates, the court is satisfied that these rulings
have at least conferred a Pyrrhic benefit on the other Plan participants
insofar as the Plan and its participants are now on notice of the Plan's
responsibilities and obligations, the participants' rights, and the relationship
between the Plan and its agents.  Accordingly, the *Chambless* factors

13

overwhelmingly weigh in Milgram's favor.

As to the actual reasonableness of attorneys' fees and costs that Milgram is seeking, the court rejects the Plan's attempt to broadly label Milgram's demand as unreasonable.  True, Milgram prevailed on only one claim; however, that claim, pursuant to 29 U.S.C. § 1132(a)(1), was *the* central claim, and the success of that claim allowed Milgram to recover a judgment in the amount of $1,571,723,73.  Milgram's other two claims under § 1132(a)(2) and (a)(3) were abandoned by him voluntarily and merely constituted two other tines on the same fork, as all three claims derived from the same set of facts and sought to vindicate the same rights.  Therefore, to the extent the Plan seeks a reduction of Milgram's attorneys' fee demand based on the argument that Milgram prevailed on only one of his claims, that request is denied.

Turning to the *Arbor Hill* and *Johnson* factors, the amount of time, labor, and skill devoted to litigating and succeeding in this action was both substantial and justified.  The substantiality of the time expended by Milgram's attorneys in this action was compounded by the dilatory actions taken—though not necessarily taken in bad faith—by the Plan.  And given the novelty and difficulty of the questions presented, which even the court

found particularly so, the 365.05 attorney hours tallied by Melvin & Melvin and the 1366.55 attorney and paralegal hours by Mackenzie Hughes were reasonable.  A review of the supporting documentation supports the accuracy and reasonableness of these hour totals.  (*See* Strickland Decl., Exs. 2, 4, 8, 9, 02-cv-255, Dkt. Nos. 28:3, 28:5, 28:9, 28:10.)  The court reaches the same conclusion with regard to the 65.7 hours spent by Scolaro, Shulman, Cohen, Fetter & Burstein, P.C. in providing consultation and expert advice about the reasonableness of Melvin & Melvin and Mackenzie Hughes's legal fees.  (*See id.*, Ex. 6, Dkt. No. 28:7; McGough and Jaffe Affs., 02-cv-255, Dkt. Nos. 28:8, 28:11.)

Additionally, as Milgram correctly points out, the reasonableness of his attorneys' fees demand is further bolstered by the money amount involved and the fact that Milgram's counsel was successful in obtaining a judgment in his favor totaling $1,571,723,73; by the fact that both Melvin & Melvin and Mackenzie Hughes assigned experienced, reputable, and able attorneys to handle this case, (*see* Strickland Decl. ¶¶ 8, 12, 02-cv-255, Dkt. No. 28:1); by the length of counsel's professional relationship with Milgram as a result of the drawn out nature of this matter; and by the complex, convoluted, and ultimately undesirable nature of this case.  On

15

the other hand, while Milgram's counsel's reputations may be enhanced by the results achieved in this case, these gains are not unique in legal practice and are of no consequence here. *See Arbor Hill*, 522 F.3d at 190. Nor does the court find of consequence any other independent interests of, expected returns to, or preclusion of employment by Milgram's counsel.

Now, as to the hourly rates set forth by Milgram's counsel, the court finds his requests reasonable based on counsel's typical rates, the rates relied upon in other contemporary cases, and the above-discussed factors. Melvin & Melvin charged $170 per hour for partners and $140 per hour for associates. Mackenzie Hughes charged $220 per hour for partners, between $125 and $165 for associates, and $80 for paralegals. Scolaro, Shulman charged between $250 and $275 per hour, with a significantly lesser amount for legal research. As to the rates charged by Melvin & Melvin, these rates, when viewed in the light of recent case law emerging from this district, are not only reasonable, but possibly less than rates that would be reasonable at this point in time. *See Price v. N.Y. State Bd. of Elections*, No. 1:06-CV-1083, 2009 WL 4730698, at *3 (N.D.N.Y. Dec. 4, 2009) ($275 per hour); *Martinez v. Thompson*, No. 9:04-CV-440, 2008 WL 5157395, at *15 (N.D.N.Y. Dec. 8, 2008) ($275 per hour); *Trudeau v.*

16

*Bockstein*, No. 05-CV-1019, 2008 WL 3413903, at *5 (N.D.N.Y. Aug. 8,

2008) (finding reasonable local hourly rates of $345, $275, $250, and $190

depending on counsel's experience and expertise); *Luessenhop v. Clinton*

*Cnty., N.Y.*, 558 F. Supp. 2d 247, 267 (N.D.N.Y. 2008) ($235 per hour);

*Overcash v. United Abstract Grp., Inc.*, 549 F. Supp. 2d 193, 197 (N.D.N.Y.

2008) ($250 per hour); *Doe v. Kaiser*, No. 6:06-CV-1045, 2007 WL

2027824, at *10 (N.D.N.Y. July 9, 2007) ($250 per hour); *Hoblock v. Albany*

*Cnty. Bd. of Elections*, No. 1:04-CV-1205, 2006 WL 3248402, at *3

(N.D.N.Y. Nov. 7, 2006) ($225 per hour).  The same goes for the hourly

rate charged by Mackenzie Hughes, which is well within the range of

reasonableness.  Moreover, the reasonableness of this hourly rate is

reinforced by the terms contained in the letter of engagement that Dr.

Milgram and Mackenzie Hughes agreed to, (*see* Strickland Decl., Ex. 3, 02-

cv-255, Dkt. No. 28:4), since it is "presume[d] ... that a reasonable, paying

client would in most cases hire counsel from within his district, or at least

counsel whose rates are consistent with those charged locally."  *Arbor Hill*,

522 F.3d at 191; *see also B.R. v. Lake Placid Cent. Sch. Dist.*, No. 07-CV-

1195, 2009 WL 667453, at *3 n.5 (N.D.N.Y. Mar. 10, 2009); *Pugach v. M &*

*T Mortg. Corp.*, 564 F. Supp. 2d 153, 157 (E.D.N.Y. 2008).  And in light of

their particular, specialized expertise, and in consideration of the "professional discount" afforded to Mackenzie Hughes, (*see id.*, Ex. 6, Dkt. No. 28:7), the fees charged by Scolaro, Shulman were equally reasonable.

Therefore, given the above analysis and findings, the success of Milgram's counsel in this case, and the relevant case law, the court concludes that Milgram's request for attorneys' fees, non-taxable costs, and expenses is reasonable, and awards him fees and costs against the Plan in the total amount of $350,807.59.

## 2.    The Plan Motion for Attorneys' Fees

The Plan moves for attorneys' fees against Breen in the amount of $504,166.50, with additional costs amounting to $21,759.85.  (*See* Hughes Aff. ¶ 24, 00-cv-238, Dkt. No. 271:1.)  Notwithstanding the Plan's patent fault in this matter, it is Breen who bears the most culpability.  Thus, Breen appears to concede the Plan's entitlement to attorneys' fees and costs, but seeks a substantial reduction based on what she perceives as inaccurate billing entries and inappropriate billing methods.  (*See* Breen Resp. Mem. of Law at 1-5, 00-cv-238, Dkt. No. 279.)  Breen offers several legitimate bases for a reduction of the Plan's demand.  First, the relevant case law of the Northern District and the Second Circuit supports a 50% reduction of

18

the hourly rate for travel time.  *See Dotson v. City of Syracuse*, No. 5:04-CV-1388; 2011 WL 817499, at *28 (N.D.N.Y. Mar. 2, 2011); *Lee v. City of Syracuse*, No. 5:03-CV-1329, 2010 WL 2834910, at *1 (N.D.N.Y. July 16, 2010); *Lewis v. City of Albany Police Dep't*, 554 F. Supp. 2d 297, 299 (N.D.N.Y. 2008); *see also Estrella v. P.R. Printing Corp.*, 596 F. Supp. 2d 723, 726 (E.D.N.Y. 2009); *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159, 169 (W.D.N.Y. 2005); *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 372-73 (S.D.N.Y. 2005).  Second, Breen contends that she should not be held liable for the costs incurred by the Plan in prosecuting its claims against Sedor and Upstate, since the Plan was ultimately unsuccessful on those claims.  While it is true that Breen is primarily responsible for this litigation and that but for her misconduct the Plan would not have brought suit against Sedor and Upstate, it was the Plan who chose to initiate the action against Sedor and Upstate. Accordingly, the costs incurred in that aspect of the action fall at the Plan's doorstep, not Breen's.  Thus, the court concurs with Breen that she is not liable for any work performed by the Plan's counsel, Hancock & Estabrook, LLP, with respect to the case against Sedor.  Additionally, to the court's chagrin, a portion of fees sought by the Plan against Breen are fees that

derive from work done in defense of the Milgram action.  These fees are certainly not recoverable against Breen or any other party.  Breen's third basis for a reduction is that the Plan's counsel (1) regularly billed at quarter-hour increments, rather than tenth-of-an-hour increments, and (2) repeatedly used the block-billing method, rather than specifically breaking down the time spent on each discrete item.  Because the court agrees that these billing methods are generally disfavored, and in this case have made it extremely difficult for both the court and counsel to evaluate the accuracy of the Plan's attorneys' fees, the court finds that a 10% reduction of the award is warranted, which amounts to $50,416.65.  In addition, the court has scoured the Plan's counsel's invoices and attempted to make the appropriate reductions for travel time fees, costs incurred regarding Sedor, Upstate, and Milgram, and other non-germane items.[6]  Having done so, the court finds that $111,449.20 should be subtracted from the award.  As to Breen's final contention, that costs incurred by the Plan in moving for summary judgment should be excluded from the award, the court rejects this contention because the motion was tactically advisable in light of the

_____

[6]This task was made considerably easier by Breen's counsel's exhaustive rundown of potentially unwarranted billing entries.  (*See* Frumkin Aff., Exs. A, B, Dkt. Nos. 280:1, 280:2.)

underlying facts, the questions at issue, and the potential to expedite the resolution of the matter.  Therefore, in light of the above, the court reduces the Plan's request by $161,865.85, and for the following reasons, awards the Plan $364,060.50 in attorneys' fees and costs.

The *Chambless* factors obviously support the Plan's claim to attorneys' fees against Breen.  This action, for the most part, derives from Breen's bad faith retention of money to which she knew she was not entitled.  Simply put, the degree of her culpability is high.  Second, as to whether Breen can presently satisfy an attorneys' fee award, the court credits the Plan's identification of significant assets in Breen's possession that could satisfy an award of attorneys' fees, though the extent to which these assets would be subject to attachment is not entirely certain. Regardless, the remaining *Chambless* factors heavily outweigh any such uncertainty.  An award of fees would undoubtedly serve as a warning to persons who receive an excessive disbursement from an ERISA-governed plan.  A comparison of the meritoriousness of the Plan's position with Breen's meritless position overwhelmingly supports an award against Breen.  And perhaps most importantly, the Plan's action ultimately conferred a common benefit on the Plan and its remaining participants,

namely a judgment ordering the return of the entirety of her ill-gotten gains with interest.  Consequently, the *Chambless* factors heavily favor the Plan.

As to the reasonableness of the Plan's attorneys' fee demand, the court is confident that the bulk of the *Arbor Hill* and *Johnson* factors that support Dr. Milgram's award equally support the reasonableness of the Plan's award.  The only three factors that must be evaluated distinctly with regard to the Plan's counsel are the attorneys' customary hourly rates, the results obtained, and the experience, reputation, and ability of the individual attorneys.  Each of these factors further support the award's reasonableness.  First, keeping in mind the hourly rates that this court and others within the Northern District have found reasonable, Hancock & Estabrook's following rates were reasonable: in 1999, $175 for partners and $90 for summer clerks; from 2000 to 2005, $190 to $260 for partners, $110 to $185 for associates, and $90 to $100 for summer clerks and paralegals; from 2006 to 2010, $225 to $330 for partners, $120 to $145 for associates, and $105 to $120 for summer clerks and paralegals.  (*See* Hughes Aff., Ex. C, 00-cv-238, Dkt. No. 271:4.)  Second, notwithstanding the Plan's unsuccessful summary judgment motion, the result obtained on their claims against Breen was a complete success.  Third, upon review of

the biographies of the attorneys who represented the Plan, (*see id.*, Ex. D, Dkt. No. 271:5), the court is fully satisfied with their experience, reputation, and ability in both the general field of litigation and the specific field of ERISA law.  Therefore, the court concludes that an award to the Plan in the amount of $364,060.50 accounts for these factors.

### 3.      Sedor and Upstate's Motion for Attorneys' Fees

Sedor and Upstate move for attorneys' fees and costs in the sum of $32,951.19 against Breen.  (*See* Ferrara Aff. ¶ 83, 00-cv-238, Dkt. No. 267:1.)  Again, while conceding Sedor and Upstate's entitlement to attorneys' fees and costs, Breen seeks a reduction for inaccurate and inappropriate billing.  (*See* Breen Resp. Mem. of Law at 5-7, 00-cv-238, Dkt. No. 279.)  As to three of Breen's contentions, the court concurs that: (1) the single-block entries for the period from January to October 2001 render a meaningful evaluation of their reasonableness impossible, which warrants a 10% reduction of the fees from that period; (2) a 50% reduction of the hourly rate for travel time is called for; and (3) conferring telephonically and setting up dates for depositions, though often done between attorneys, is sufficiently administrative in nature to warrant a reduction to the paralegal rate, *see Peterson v. Foote*, No. 83-CV-153,

1995 WL 118173, at *8 (Mar. 13, 1995).  On the other hand, the court

rejects Breen's remaining contentions regarding the fees associated with

Sedor and Upstate's unsuccessful summary judgment motion, and

regarding any block-billing entries found in the November 2001 to March

2010 invoices or any quarter-hour billing increments, both of which the

court deems negligible.  And for the following reasons, the court finds that

Sedor and Upstate are entitled to a reasonable award of attorneys' fees,

costs, and disbursements in the amount of $27,964.53.[7]

    As Breen concedes, Sedor and Upstate are entitled to attorneys' fees

under ERISA.  Without discussing the *Chambless* factors ad infinitum, the

court simply points out again that Breen's culpability is central, that had she

not retained in bad faith money that was not hers this entire action could

have been averted, and that the same factors that entitle the Plan to

attorneys' fees entitle Sedor and Upstate to attorneys' fees.  Similarly, the

majority of the *Arbor Hill* and *Johnson* factors that support the

reasonableness of an award in both Milgram and the Plan's favor also

---

[7]This total represents $32,951.19 minus the following reductions: (1) a 10 % reduction
of $20,442.19, (*see* Ferrara Aff. ¶ 46, 00-cv-238, Dkt. No. 267:1), which amounts to $2,044.22;
(2) a 50% reduction of 33.5 hours of travel time charged at $5532.50, (*see id.*, Exs. 13, 15, 27,
28, 38, 50, 53, Dkt. Nos. 267:6-10), which amounts to $2766.25; and (3) a reduction of the
hourly wage from $165 to $85 for certain time, 2.2 hours, spent on the telephone setting up
depositions, (*see id.*, Exs. 14, 15, 25, 26, 29, Dkt. Nos. 267:6-8), which amounts to $176.00.

support the reasonableness of the court's award to Sedor and Upstate.

The three distinct factors, again, are Sedor and Upstate's counsel's

customary hourly rates, the results they obtained, and their experience,

reputation, and ability.  The court is confident that these party-specific

factors each support the attorneys' fee amount.  First, in light of the

relevant case law setting forth reasonable hourly rates, the following rates

of Costello, Cooney & Fearon, PLLC  were certainly reasonable: from

January 2001 to January 2005, $165 for partners, $150 for associates, and

$85 for paralegals; from January 2005 to January 2009, $175 for partners,

$150 for associates, and $85 for paralegals; and after January 2009, $250

for partners, $175 for associates, and $110 for paralegals.  (*See* Ferrara

Aff. ¶¶ 40, 41, 49, 00-cv-238, Dkt. No. 267:1.)  Second, despite Sedor and

Upstate's unsuccessful motion for summary judgment—which, like the

Plan's motion, was factually, legally, and procedurally advisable—the

ultimate results obtained by their counsel vis-a-vis Breen's claims can

definitively be labeled a successful defense.  And third, the experience,

reputation, and ability of Sedor and Upstate's lead counsel, Mr. Paul

Ferrara, is considerable, particularly in the field of ERISA.  (*See id.* at ¶¶

78-80.)  Therefore, the court finds that an award in the amount of

$27,964.53 is both warranted and reasonable.

### III. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Breen's motion to alter and remove language (00-cv-238, Dkt. No. 278) from the court's March 30, 2010 Order is **DENIED**; and it is further

**ORDERED** that the Plan's motion to amend the costs awarded to Milgram (02-cv-255, Dkt. No. 54) is **GRANTED** insofar as Milgram is ordered to supplement and/or amend his bill of costs as it relates to witness fees and "other" fees, but is otherwise **DENIED** as to the remainder of Milgram's bill of costs; and it is further

**ORDERED** that the Plan's motion to amend the costs awarded to Sedor and Upstate (00-cv-238, Dkt. No. 291) is **GRANTED** insofar as the Clerk is directed to strike Sedor and Upstate's bills of costs (00-cv-238, Dkt. Nos. 287, 289) from the record, but is otherwise **DENIED** with leave to renew; and it is further

**ORDERED** that Sedor and Upstate are **GRANTED** leave to file a new bill of costs; and it is further

**ORDERED** that Milgram's motion for attorneys' fees and costs

against the Plan (02-cv-255, Dkt. No. 28) is **GRANTED** in the amount of $350,807.59; and it is further

     **ORDERED** that the Plan's motion for attorneys' fees and costs against Breen (00-cv-238, Dkt. No. 271) is **GRANTED** in the amount of $364,060.50; and it is further

     **ORDERED** that Sedor and Upstate's motion for attorneys' fees against Breen (02-cv-255, Dkt. No. 34; 00-cv-238, Dkt. No. 267) is **GRANTED** in the amount of $27,964.53; and it is further

     **ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 12, 2011
Albany, New York

Gary L. Sharpe
U.S. District Judge

27